UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Madeline Cox Arleo |
| v. | : | Magistrate No. 11-8243 |
| PADMA SIRIPURAPU | : | **CRIMINAL COMPLAINT** |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Department of Health and Human Services, Office of the Inspector General, and that this Complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Andrew Reyes, Special Agent
Department of Health and Human Services
Office of the Inspector General

Sworn to before me and subscribed in my presence,
December __, 2011 at Newark, New Jersey

_____
HONORABLE MADELINE COX ARLEO
UNITED STATES MAGISTRATE JUDGE   Signature of Judicial Officer

## ATTACHMENT A

From at least in or about 2010 through at least in or about November 2011, in the District of New Jersey, and elsewhere, defendant

## PADMA SIRIPURAPU

did knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, a kickback, from Orange Community MRI in return for referring patients to Orange Community MRI for the furnishing or arranging for the furnishing of items and services for which payment may be made in whole or in part under a Federal health care program, as described in Attachment B below.

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), and Title 18, United States Code, Section 2.

## ATTACHMENT B

I, Andrew Reyes, am a Special Agent with the Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"). I have knowledge of the facts set forth herein through my personal participation in this investigation and through oral and written reports from other federal agents or other law enforcement officers. Where statements of others are set forth herein, these statements are related in substance and in part. Since this Criminal Complaint is being submitted for a limited purpose, I have not set forth every fact that I know or other law enforcement officers know concerning this investigation. I have only set forth those facts that I believe are sufficient to show probable cause exists to believe that the defendant has committed the offense set forth in Attachment A. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. At all times relevant to this Complaint:

   a. Defendant PADMA SIRIPURAPU was a physician licensed in New Jersey practicing internal medicine. SIRIPURAPU operated an office at 101 Ludlow Street in Newark, New Jersey.

   b. Orange Community MRI ("OCM") was located at 345 Henry Street, Suite 102, Orange, New Jersey. OCM provided services to patients that included magnetic resonance imaging ("MRIs"), ultrasound imaging ("Ultrasounds"), echocardiograms ("Echos"), computed axial tomographies ("CAT Scans" or "CT Scans"), and dual-emission X-ray absorptiometries ("DEXA Scans") (collectively, the "diagnostic tests").

   c. There was a Cooperating Witness (the "CW") who held himself out to be

an individual acting on behalf of OCM. Starting from in or about late September 2011 to in or about December 2011, the CW did so at the direction and under the supervision of HHS-OIG.

2. The Medicare Program ("Medicare") is a federal program that provides free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare is a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f). Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

3. The Medicare Part B program is a federally funded supplemental insurance program that provides supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled. The Medicare Part B program pays for various medical services and diagnostic testing, including MRIs, Ultrasounds, Echos, CT Scans, and DEXA Scans for beneficiaries.

4. The Medicaid Program ("Medicaid") is a jointly funded, federal-state health insurance program that provides certain health benefits to the disabled, as well as individuals and families with low incomes and resources. The federal involvement in Medicaid is largely limited to providing matching funds and ensuring that states comply with minimum standards in the administration of the program. Medicaid is a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f). Individuals who receive benefits under Medicaid are commonly referred to as "beneficiaries."

5. The federal Medicaid statute sets forth the minimum requirements for state Medicaid programs to qualify for federal funding, which is called federal financial participation. 42 U.S.C. §§ 1396 et seq. In New Jersey, the New Jersey Medical Assistance Program is

administered by the New Jersey Department of Human Services. Under New Jersey law, Medicaid pays for certain medical services and diagnostic testing, including MRIs, Ultrasounds, Echos, CAT Scans, and DEXA Scans for beneficiaries.

6. At all times relevant to this Complaint, OCM was a Medicare- and Medicaid-approved provider of, among other things, diagnostic testing, including MRIs, Ultrasounds, Echos, CAT Scans, and DEXA Scans.

The Kickback Scheme

7. Starting at least in or about 2010, individuals acting on behalf of OCM made cash payments to certain New Jersey health care practitioners, including SIRIPURAPU, in exchange for referring patients to OCM for diagnostic tests.

8. After the end of each calendar month, individuals acting on behalf of OCM, including CW, printed OCM patient reports that included, among other information, dates of service, patient name, the referring health care practitioner, the kind of medical insurance to be billed, and the diagnostic tests performed (the "Kickback Reports"). There was a separate Kickback Report printed for OCM patients who received MRIs, Ultrasounds, Echos, CAT Scans, and DEXA scans. The Kickback Reports were then used to tally the number of OCM patient diagnostic tests referred by each doctor and the type of insurance used, and the results of these tallies were used to determine the amount of the kickback payment paid by OCM to the health care provider. In the event the Ultrasound Kickback Report indicated that OCM performed an Ultrasound on both the right and left portions of a patient (e.g., right venous doppler and left venous doppler), the right and left Ultrasounds counted as only one diagnostic test for the purpose of calculating the kickback payment.

3

9. Pursuant to SIRIPURAPU's agreement with OCM, SIRIPURAPU was to receive payment from OCM for each Medicare or Medicaid beneficiary MRI or CAT Scan referred to OCM by SIRIPURAPU, R.M. M.T., and A.P, all health care practitioners that perform at least some of their practice in the same office as SIRIPURAPU. Pursuant to the same agreement, SIRIPURAPU also was to receive payment from OCM for certain privately-insured patient MRI or CAT Scans referred to OCM by SIRIPURAPU, R.M. M.T., and A.P. In the event a patient referred to OCM paid for diagnostic tests directly and not through Medicare, Medicaid, or an insurance plan (i.e., the patient "self-paid" for the tests), then SIRIPURAPU did not receive any payment.

10. According to the MRI Kickback Report, for September 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 19 MRIs to OCM; 15 of those 19 tests were for Medicare or Medicaid beneficiaries. According to the Ultrasound Kickback Report, for September 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 52 Ultrasounds to OCM; 30 of those 52 tests were for Medicare or Medicaid beneficiaries. According to the Echo Scan Kickback Report, for September 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 10 Echo Scans to OCM; 6 of those 10 Echo Scans were for Medicare or Medicaid beneficiaries. According to the CAT Scan Kickback Report, for September 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 7 CAT Scans to OCM; all 7 of those tests were for Medicare or Medicaid beneficiaries. According to the DEXA Scan Kickback Report, for September 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 4 DEXA Scans to OCM; 2 of those 4 DEXA Scans were for Medicare or Medicaid beneficiaries.

11. On or about November 2, 2011, SIRIPURAPU met with CW at SIRIPURAPU's office located at 101 Ludlow Street in Newark, New Jersey. During this meeting, SIRIPURAPU accepted from CW a white envelope containing $3,600 in cash, which included payments for the 15 MRIs referred to OCM and performed on Medicare or Medicaid beneficiaries, the 30 Ultrasounds referred to OCM and performed on Medicare or Medicaid beneficiaries, the 6 Echo Scans referred to OCM and performed on Medicare or Medicaid beneficiaries, the 7 CAT Scans referred to OCM and performed on Medicare or Medicaid beneficiaries, and the 2 DEXA Scans referred to OCM and performed on Medicare or Medicaid beneficiaries, during September 2011.

12. According to the MRI Kickback Report, for October 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 19 MRIs to OCM; 15 of those 19 tests were for Medicare or Medicaid beneficiaries. According to the Ultrasound Kickback Report, for October 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 42 Ultrasounds; 27 of those 42 tests were for Medicare or Medicaid beneficiaries. According to the Echo Scan Kickback Report, for October 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 10 Echo Scans; 7 of those tests were for Medicare or Medicaid beneficiaries. According to the CAT Scan Kickback Report for October 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 7 CAT Scans to OCM; at least 4 of those 7 tests were for Medicare or Medicaid beneficiaries. According to the DEXA Scan Kickback Report, for October 2011, SIRIPURAPU, R.M. M.T., and A.P referred a total of 13 DEXA Scans to OCM; at least 9 of those tests were for Medicare or Medicaid beneficiaries.

13. On or about November 17, 2011, SIRIPURAPU met with CW at SIRIPURAPU's office located at 101 Ludlow Street in Newark, New Jersey. During this meeting, SIRIPURAPU accepted from CW a white envelope containing $3,450 in cash, which included payments for the

15 MRIs referred to OCM and performed on Medicare or Medicaid beneficiaries, the 27 Ultrasounds referred to OCM and performed on Medicare or Medicaid beneficiaries, the 7 Echo Scans referred to OCM and performed on Medicare or Medicaid beneficiaries, the 4 CAT Scans referred to OCM and performed on Medicare or Medicaid beneficiaries, and the 9 DEXA Scans referred to OCM and performed on Medicare or Medicaid beneficiaries during October 2011.

14. During this meeting, SIRIPURAPU and CW discussed whether SIRIPURAPU would be paid for referrals from other health care practitioners. When discussing which other health care practitioners should be included in SIRIPURAPU's "rent", SIRIPURAPU stated "[D.O.] . . . [T.M.] . . . [a]nd um, [T.G.]. There are three nurse practitioners told to work . . . [A.P.] will come on Saturdays and work here . . ." SIRIPURAPU then confirmed, in sum and substance, that R.M. should also be included. SIRIPURAPU then stated "[t]his is all we are doing here? This is it? Dr... we are four or five, or six people are doing only this much? Dr. Lagrada [another health care practitioner who accepted kickbacks during the relevant time period] is doing six-thousand or seven-thousand himself?"